# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD B. MELBYE,<br><br>    Plaintiff,<br><br>vs.<br><br>ACCELERATED PAYMENT TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | CASE NO.  10-CV-2040-IEG (JMA)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, A NEW TRIAL, OR TO ALTER THE JUDGMENT**<br><br>[Doc. No. 149] |

Before the Court is Defendant Accelerated Payment Technologies, Inc. ("APT")'s motion for judgment as a matter of law, a new trial, or to alter the judgement. [Doc. No. 149.] Though Defendant's opening brief references these three separate bases,[1] neither party's briefing distinctly argues the separate legal standards applicable thereto. Nevertheless, because the record contains sufficient evidence to support the jury's verdict under each of these standards, the Court hereby **DENIES** Defendant's motion in its entirety.

## BACKGROUND

This is a breach of contract case. Plaintiff was a salesman for Defendant and its predecessor ("CAM"), paid largely on commission for revenue generated by his marketing of "X-Charge," a software program for processing credit cards directly from computerized cash

---

[1]  Plaintiff failed to brief, and incredulously denied during oral argument, any basis other than Fed. R. Civ. P. 50(b), even though Defendant's motion expressly references alternative bases. [*See*, *e.g.*, Doc. No. 149 at 10 (self-referencing "APT's Renewed to Motion for Judgment as a Matter of Law, or in the Alternative, a New Trial"); *id*. at 17 (requesting that the Court "alter/amend the judgment pursuant to Federal Rule of Civil Procedure 59(e)").] Plaintiff's narrow read cannot cabin the Court's duty to adjudicate the full and express scope of Defendant's motion.

registers. Plaintiff alleged an oral or implied in fact contract, entered into with the former CEO of CAM, Geoff Knapp, for the continued payment of his X-Charge commissions post-termination as long as he was not terminated for cause. Great Hill Partners, a private equity firm, purchased CAM in 2008, renamed the company APT, and on March 31, 2010, APT terminated Plaintiff without cause, refusing to pay commissions for revenue received beyond that date.

Plaintiff brought suit in the Superior Court for the County of San Diego on September 2, 2010, alleging nine claims, all of which revolved around the principal allegation that APT's failure to pay post-termination commissions constitutes a breach of an oral or implied in fact contract. [*See* Doc. No. 1.] On September 30, 2012, Defendant removed to this Court on the basis of diversity. [*Id.*] On November 18, 2011, Defendant moved for summary judgment on all claims. [Doc. No. 35.] On January 11, 2012, the Court granted in part and denied in part Defendant's motion, leaving Plaintiff with the following six claims: (1) breach of an oral or implied in fact contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unfair competition under California Business and Professions Code § 17200; (4) failure to pay wages when due under the California Labor Code; (5) penalties pursuant to California Labor Code § 203; and (6) declaratory relief. [Doc. No. 48.]

Trial by jury on these remaining claims commenced on September 11, 2012. [Doc. No. 117.] On September 17, 2012, at the close of Plaintiff's case, Defendant moved for judgment as a matter of law under Fed. R. Civ. P. 50(a), which the Court largely denied but granted as to Plaintiff's claims for unpaid wages and penalties claims under the California Labor Code. [*See* Doc. Nos. 128, 147.] The Court also ruled that Plaintiff's unfair competition and declaratory relief claims were equitable and thus to be decided by the Court after the jury reached a verdict. [*See* Tr. Transcript, 9/17/12, 73:24-74:13.] That left only two claims for the jury: (1) breach of an oral or implied-in-fact contract; and (2) breach of the implied covenant of good faith and fair dealing.

On September 20, 2012, a jury returned a unanimous verdict finding that Defendant breached an oral or implied in fact contract with Plaintiff for post-termination commissions and awarded him $6,225,000 in damages. [Doc. No. 136.] The Court entered judgment on October 10, 2012, [Doc. No. 148], and on October 12, 2012, Defendant timely filed the present motion, [Doc. No. 149].

## DISCUSSION

Defendant argues that "no evidence supports an implied agreement to pay Plaintiff post-termination commissions," and thus that the Court should either enter judgment as a matter of law, order a new trial, or alter the damages award. [*See, e.g.*, Doc. No. 149 at 1, 10, 17.]

On a renewed motion for judgment as a matter of law, courts "review a jury's verdict for substantial evidence," *i.e.*, "'evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion.'" *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961, 963 (9th Cir. 2009) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). "Although the court should review the record as a whole, it must disregard evidence favorable to the moving party that the jury is not required to believe, and may not substitute its view of the evidence for that of the jury." *Pavao*, 307 F.3d at 918 (internal quotation omitted). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *E.E.O.C.*, 581 F.3d at 961.

Motions for a new trial are subject to the more lenient standard of whether the "verdict is against the clear weight of the evidence." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). Under this standard, "the district court has the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Id.* (internal quotation omitted). Motions to alter or amend a judgment "should not be granted . . . unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Nor may such motions "be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008) (citations omitted).

Under each of these standards, the record here contains sufficient evidence to support the jury's verdict.[2] The principal claim litigated was for breach of an implied contract, of which the

---

[2] Plaintiff points to emails obtained in a separate action not admitted during this trial and purported post-trial communications with jurors, requests that the Court draw inferences therefrom against Defendant on the present motion, and vaguely asserts that the emails "should be the basis of some form of sanction against Defendant's [sic] APT and their counsel." [*See* Doc. No. 153 at 20.]

required elements are: the existence of an implied in fact contract; plaintiff's performance under that contract; defendant's breach of that contract; and resulting damages.[3]  *See Hamilton v. Greenwich Investors XXVI, LLC*, 195 Cal.App.4th 1602, 1614 (Cal. Ct. App. 2d. 2011).  On this motion, Defendant challenges the contract's existence, breach, and damages.  As discussed below, each of these elements is supported by sufficient evidence in the record.

**A.   The Alleged Contract's Existence is Supported by the Evidence**

Plaintiff presented sufficient evidence to support the existence of the alleged implied in fact contract.  Most directly, Plaintiff explicitly testified to the contract's existence:

> Q. [By Mr. Curran]: Would you please tell the jury exactly what breach of an agreement that you are alleging in this lawsuit?
>
> A. [By Mr. Melbye]: ***The breach of agreement was that commission, my ongoing revenue stream was to be continued to be paid as Geoff [Knapp] committed to me . . . that I would continue to get these ongoing revenues unless I was terminated for cause***.

[Tr. Transcript Day 4, 9/14/12, 87:21-25; *see also id* at 86:18-87:2.]

Knapp, on behalf of CAM, the other party to this alleged implied in fact contract, similarly testified to its existence:

> Q. By Mr. Curran: ***Is that the commitment you made to Mr. Melbye***: ***if he was terminated for any reason other than cause, he would continue to receive his commission***?
>
> A. [By Mr. Knapp]: ***I think that was implied in my, in my statement to him*** that I wasn't going to terminate him without cause to take away his commissions.

[Tr. Transcript Day 1, 9/11/12, 32:5-9.]

> Q. [By Mr. Curran]: . . . was there any oral agreement with Mr. Melbye to pay him commissions post-termination if he were terminated without cause?
>
> A. [By Mr. Knapp]: . . . I made a commitment to him that I would not terminate him to take away his commissions.
>
> Q. [By Mr. Curran]: And when you used the word I there, ***you don't mean I, Geoff Knapp, personally.  You mean I, CAM?***

---

Plaintiff's requests are wholly unsupported, improper, and thus rejected.  *See McEuin v. Crown Equipment Corp.*, 328 F.3d 1028, 1037 (9th Cir. 2003) ("Evidence not admitted at trial cannot be used in a review of [a jury's verdict] . . . The record should be taken as it existed when the trial was closed.") (internal quotation omitted).

[3]   The parties have not distinctly argued Plaintiff's other causes of action, and appear to agree that Plaintiff's claims for breach of the implied covenant of good faith and fair dealing, unfair competition, and declaratory relief all depend on the same facts, evidence, and arguments put forth in regard to the breach of contract claim.  [*See, e.g.*, Doc. No. 149 at 16-17.]

A. [By Mr. Knapp]: ***Yeah, I, I as the CEO of the company with the authority to do those things.***

[Tr. Transcript Day 2, 9/11/12, 59:4-17.]

Thus, both contracting parties testified to the implied contract's existence and terms. This testimony, found credible by the jury, suffices to support the inference that the alleged contract existed. *See E.E.O.C.*, 581 F.3d at 965 ("under the substantial evidence standard, applicable to a properly made Rule 50(b) motion, [direct testimony is] sufficient evidence to support the jury's conclusion.").

Moreover, the record also contains ample circumstantial evidence of the alleged implied contract. Under applicable California law:

> factors apart from consideration and express terms may be used to ascertain the existence and content of an employment agreement, including "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged.

*Foley v. Interactive Data Corporation*, 47 Cal. 3d 654, 680 (Cal. 1988). In *Foley*, the California Supreme Court ascertained an implied in fact agreement from "repeated oral assurances of job security and consistent promotions, salary increases and bonuses during the term of [Plaintiff's] employment contributing to his reasonable expectation that he would not be discharged except for good cause." *Id.* at 681.[4]

Here, the record similarly contains testimony as to Plaintiff's longevity of service, repeated assurances of job security as well as repeated assurances from Knapp to Plaintiff that the alleged commissions would not be taken away, testimony as to Plaintiff's value to the success of CAM and X-Charge, and of the practice within CAM of offering sales people residual commissions contracts. [*See, e.g.*, Tr. Transcript Day 3, 9/14/12, 117:3-15, 119:6-24.] This evidence is probative of whether the alleged implied in fact contract existed, and thus supports the jury's finding that it did. *See Foley*, 47 Cal. 3d at 680.

---

[4] The Court is unpersuaded by Defendant's argument that the factors mentioned in the *Foley* decision are only probative of implied contracts for continued employment. [*See, e.g.*, Doc. No. 154 at 3 ("the *Foley* factors . . . are intended to analyze an implied contract for employment, not commissions . . .").] The language of the opinion contains no such limitation. *See Foley*, 47 Cal. 3d at 680 (referring broadly to "factors . . . used to ascertain the existence and content of an employment agreement" without qualification). Nor has Defendant pointed to any authority interpreting *Foley* so narrowly.

Against this ample evidence, Defendant asserts three arguments: (1) the implied contract terms were unenforceable because they contradict the written Employee Handbook; (2) Knapp's testimony that he believed the implied agreement was personal, not legal, rendered it unenforceable; and (3) the Change of Control agreement subsumed any prior implied in fact agreement.

### 1. The Employee Handbook Does Not Undermine the Jury's Verdict

Defendant argues that the alleged implied contract, even if it existed, would be unenforceable because it conflicts with a purportedly valid express written contract, *i.e.*, the Employee Handbook. [*See* Doc. No. 154 at 6 ("Even if there were an implied promise, . . . Plaintiff cannot escape from written documents governing his employment that explicitly state that he is not entitled to post-termination commissions.").] To be sure, under California law, to the extent there is a valid express written contract, any implied terms that conflict therewith are unenforceable. *See Wal-Noon Corp. v. Hill*, 45 Cal. App .3d 605 (1975). But here, it is far from clear that the Employee Handbook was in fact a valid express contract or that it applied to Plaintiff.

Though the Employee Handbook was discussed during the trial, the parties did not fully litigate its validity, scope, or enforceability. These issue were not the focus of the trial. The Court had already acknowledged, "[i]n this case, there is no *express written agreement* governing Melbye's entitlement to post-termination commissions. Rather, there is only an alleged oral [or implied] agreement [] promising post-termination commissions and several written *policies* to the contrary." [Summary Judgment Order, Doc. No. 48 at 13.] And "provisions in personnel handbooks, manuals, or memoranda do not bar, or necessarily overcome, other evidence of the employer's contrary intent." *Guz v. Bechtel Nat. Inc*., 24 Cal.4th 317, 340 (Cal. 2000). As discussed *supra*, the record contains express testimony and other ample evidence of Melbye and Knapp's contrary intent. Moreover, the Employee Handbook itself states that "[i]t does not contain the complete terms or conditions of any of the company's current benefit plans or policies . . ." [*See* Doc. No. 153 at 10.] The jury was free to weigh all of this evidence, find some, all, or none of it credible and persuasive, and reach the conclusion that the Employee Handbook did not render the alleged implied contract invalid.

///

### 2. Knapp's Testimony Does Not Undermine the Jury's Verdict

Defendant also argues that Knapp's testimony of "a moral obligation" to Melbye and that he "did not believe there was a legal obligation" to pay post-termination commissions, renders the alleged implied contract unenforceable as a matter of law. [*See* Doc. 154 at 7.] This argument fails on several grounds. First, Knapp's opinion as to the legality of the agreement is irrelevant. Knapp is neither a lawyer nor an expert and, even if he was, the jury was still free to disregard his testimony as incredible or insignificant. Second, it is unclear what Knapp actually thought. Though at points he testified that he didn't believe the agreement was legally enforceable, at other points he testified that he "had a moral ***and legal*** obligation to continue, as the CEO, to pay [Melbye] his post-termination commissions." [Tr. Transcript Day 2, 9/12/12, 56:14-19.] Third, Defendant cites no authority for the proposition that personal or moral commitments cannot also be legally enforceable. Accordingly, Knapp's testimony does not warrant judgment as a matter of law.

### 3. The Change of Control Agreement Does Not Undermine the Jury's Verdict

Defendant further argues that the Change of Control agreement subsumed and extinguished any implied promise. [*See* Doc. No. 149 at 15.] This argument fails for many of the same reasons as the Employee Handbook argument. On Defendant's own motion *in limine*, the Court held that the case was limited to an alleged breach of an oral or implied in fact contract, and thus testimony as to the distinct Change of Control agreement was severely restricted at trial; the parties could testify to its existence, but no more. [*See* Doc. Nos. 74, 95, 96.] Given this limitation, it should be no surprise that the validity, scope, and terms of the Change of Control agreement were not thoroughly litigated at trial, much less counter-arguments such as ambiguity, mutual mistake of fact, and rescission. Plaintiff was specifically precluded from introducing such evidence, and thus Defendant's present argument is spurious; after having moved to exclude evidence of the terms and enforceability of the Change of Control agreement as irrelevant to the claims alleged, Defendant now seeks judgment as a matter of law for Plaintiff's failure to introduce that very evidence.

Nor does Knapp's testimony that the Change of Control Agreement "superceded everything" compel a finding that the alleged contract for post-termination commissions was in

fact superceded by the Change of Control Agreement. [*See, e.g.*, Doc. No. 154 at 7 (quoting Tr. Transcript Day 2, 9/12/12, 74:23-75:3).] The jury was free to discredit or disregard any or all of Knapp's testimony as incredible. So, too, the jury was free to give more weight to Melbye's contrary testimony that the Change of Control agreement didn't apply to him and that any conflict with the alleged agreement for post-termination commissions was mistake. [*See, e.g.*, Tr. Transcript Day 3, 9/13/12, 139:24-140:15.] Moreover, even if the Change of Control agreement was enforceable, it is far from clear that it in fact conflicted with the alleged implied agreement. [*See id.*] Thus, the evidence of the Change of Control agreement does not warrant judgment as a matter of law.

### B. Defendant's Breach Is Supported By The Evidence

Defendant also argues that even if an implied contract did exist, no evidence in the record supports a "breach" of the contract. [*See* Doc. No. 149 at 14-15.] This argument fails because it rests on a mischaracterization of the implied contract's alleged terms. Defendant points to Knapp's statement that Melbye would not be terminated "to take away his commission," also that there is no evidence that Melbye was in fact terminated for that reason, and defendant concludes that there was no breach. [*Id.*]

But Plaintiff testified to different terms:

> Q. [By Mr. Curran]: Would you please tell the jury exactly what breach of an agreement that you are alleging in this lawsuit?
>
> A. [By Mr. Melbye]: ***The breach of agreement was that commission, my ongoing revenue stream was to be continued to be paid as Geoff [Knapp] committed to me . . . that I would continue to get these ongoing revenues unless I was terminated for cause***.

[Tr. Transcript Day 4, 9/14/12, 87:21-25; *see also id* at 86:18-87:2.]

The jury was free to find credible Melbye's characterization of the terms of the contract. Under those terms, a breach occurred if Melbye was terminated without cause and Defendant failed to pay post-termination commissions. [*Id.*] It is undisputed that Melbye was not terminated for cause. [*See* Doc. Nos. 68, 95.] Again as a result of motions *in limine*, the parties were restricted from introducing any evidence about why Melbye was terminated. [*Id.*] Nor is there any dispute that Defendant failed to pay post-termination commissions. Defendant's own witnesses testified that "we do not and nor have ever paid commissions post-termination, never . . ." [*See*, Tr. Transcript Day 5, 9/18/12, 114:8-17.] Therefore, there is sufficient evidence to

support the jury's findings as to the terms of the alleged implied contract and Defendant's breach thereof.

### C.     Award of Damages

Defendant also argues, nominally under Fed. R. Civ. P. 59(e)[5], that the jury's award of damages should be reduced in whole or in part. [*See* Doc. No. 149 at 17-18.] First, Defendant argues that the damages amount must be altered to directly coincide with to the parties' expert testimony. [*See* Doc. No. 149 at 17.] This argument fails. "Reasonable jurors need not accept the views of one side's expert or the other's, but may make their own reasonable judgment on the evidence, accepting part, all, or none of any witness's testimony." *In re Exxon Valdez*, 270 F.3d 1215, 1248 (9th Cir. 2001). The amount the jury awarded, $6,225,000, is supported by testimony that Plaintiff's commissions averaged $450,000 per year, which roughly equals $37,500 per month. [*See* Tr. Transcript Day 3, 9/13/12, 170:8-16.] Plaintiff requested commissions for 166 months and $37,500 multiplied by166 equals exactly $6,225,000. Thus, it is reasonable to infer that the damages award properly resulted from basic calculations based on evidence in the record.

Second, Defendant argues that Plaintiff failed to accept APT's offer of a substitute employment contract, and that this failure to accept constitutes a failure to mitigate fatal to any claim for damages. [Doc. No. 149 at 17-18.] But Plaintiff had no burden to introduce evidence of mitigation. Rather, "the burden to prove failure to mitigate damages lies squarely with the employer." *Candari v. Los Angeles Unified School Dist.*, 193 Cal.App.4th 402 (Cal. Ct. App. 2011) ("the employee's rejection of or failure to seek other available employment of a different or inferior kind may not be resorted to in order to mitigate damages"). As such, "before projected earnings from other employment opportunities not sought or accepted by the discharged employee can be applied in mitigation, the employer must show that the other employment was comparable,

---

[5]     Plaintiff incorrectly contends that Defendant's damages arguments are "procedurally defective and improper" because they were not first raised in a Fed. R. Civ. P. 50(a) motion. [*See* Doc. No. 153 at 16.] Though, generally, "a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion," *Molski*, 481 F.3d at 729, arguments raised for the first time under R 50(b) are not necessarily waived; rather, such arguments are subject to plain error instead of substantial evidence review. *See, e.g., O'Phelan v. Loy*, 2012 WL 5350965, at *2 (9th Cir. Oct. 25, 2012). In any event, Defendant here explicitly invokes Rule 59(e) as the basis for these arguments, and thus Plaintiff's objections under Rule 50 are inapt. [*See* Doc. No. 149 at 17 (". . . pursuant to Federal Rule of Civil Procedure 59(e) . . .").]

or substantially similar, to that of which the employee has been deprived." *Id.*

Here, Defendant made no such showing. Indeed, Defendant failed to even define the terms of the purported substitute agreement and thus it remains unclear what if anything Plaintiff would have received. Moreover, Plaintiff testified that the substitute agreement was intended to take away his commissions. [*See, e.g.*, Tr. Transcript Day 3, 9/13/12, 154:7-17.] "A discharged employee is not required to accept re-employment from his employer if acceptance would sacrifice his right to claim damages to which he is entitled by reason of the violation of the contract by the employer." *Billeter v. Posell*, 94 Cal.App.2d 858, 862-63 (Cal. Ct. App. 1949). "Since defendants' offer to continue plaintiff in their employ . . . was not so qualified as to preserve h[is] rights under the contract and since if []he had accepted the offer []he would have modified h[is] employment contract and waived any right to recovery thereunder, defendants are not entitled to the credit claimed." *Id.*; *see also Hope v. California Youth Authority*, 134 Cal. App. 4th 577, 595 (Cal. Ct. App. 2005) ("CYA contends Hope did not offer sufficient evidence to prove . . . that Hope could not mitigate his future loss of earnings by obtaining employment . . . This argument is based on a faulty legal premise, namely, that the employee has the burden of proving an inability to work . . . CYA offered no evidence as to the amount that Hope might have earned through reasonable effort. Nor did CYA make any showing about the availability of comparable or substantially similar employment. For these reasons, CYA's mitigation argument fails."). Defendant's mitigation argument thus fails to warrant any alteration to the jury's damages award.

## CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Defendant's motion in its entirety.

**IT IS SO ORDERED.**

**DATED:** November 27, 2012

**IRMA E. GONZALEZ**
**United States District Judge**